THOMSON ELECTRIC WELDING CO. v. BARNEY & BERRY, Inc.

(District Court, D. Massachusetts.   July 11, 1916.)

No. 701.

PATENTS ⊙═⊃328—VALIDITY AND INFRINGEMENT—PROCESS OF ELECTRIC WELD-
ING.
 The Harmatta patent, No. 1,046,066, for a process of electric welding
and its product, *held* valid and infringed.

In Equity.   Suit by the Thomson Electric Welding Company against
Barney & Berry, Incorporated.   On entry of decree on mandate.

F. P. Fish and Fish, Richardson, Herrick & Neave, all of Boston,
Mass., for plaintiff.

Edwards, Sager & Wooster and Clinton V. Edwards, all of New
York City, and Browne & Woodworth, of Boston, Mass., for de-
fendant.

DODGE, Circuit Judge.   The opinion of the Court of Appeals
dated October 5, 1915 (227 Fed. 428, 142 C. C. A. 124), reversing the
decree of this court which held the patent in suit invalid, was follow-
ed by hearings in this court in December, 1915, and January, 1916,
upon draft decrees submitted by the respective parties for entry in
pursuance of the directions given in said opinion.   The defendant
thereafter applied to the Court of Appeals for leave to amend its
answer by setting up, as an anticipation of the patent in suit, a French
patent to Bouchayer, which application was denied June 14, 1916,
236 Fed. 1022, —— C. C. A. ——.

The further proceedings in this court in pursuance of the Court of
Appeals' decision on October 5, 1915, have been in substance as fol-
lows:

The plaintiff, submitting a draft decree adjudging the patent valid
and providing in the usual terms for an injunction and accounting,
stated that it had no further proof to offer and submitted that the
facts of the infringement whereof it complained were shown by the
record before the appellate court.

The defendant submitted two draft decrees, one dismissing the bill,
the other, in the alternative, containing a proviso excepting from the
operation of the injunction any machines, processes, and products
made or used before the amendment of the patentee's application be-
fore the issue of the patent made March 31, 1910.

The defendant thereupon offered to prove, and the plaintiff con-
ceded, though objecting that the facts conceded were immaterial, that
the witnesses produced by the Toledo Company, whose testimony ap-
pears in the record, testified as to certain machines used for spot
welding in 1908 and 1909 and prior to March, 1910; that said ma-
chines were in fact used for spot welding; and that when so used they
practiced the Harmatta method with the Harmatta result, under any
construction as to them, of the claims in suit.

---

⊙═⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The defendant then offered in evidence the French patent to Bouchayer, since brought by it before the Court of Appeals in its application denied June 14, 1916, as above stated. This was excluded, as was also a translation of the patent into English, objected to by the plaintiff, as incorrect; and evidence offered by the defendant to prove that the translation was correct.

The defendant offered expert evidence to explain the operation of the machine described in the patent in suit and its process. This was also excluded.

The defendant then moved for leave to amend its answer so as to set up said Bouchayer patent as an anticipation of the patent in suit, which motion was denied; this court not regarding the opinion of the Court of Appeals as permitting such an amendment at that stage of the proceedings.

The defendant then called Mr. Cutler, a witness who testified on its behalf at the original hearing, and he was permitted to testify, against the plaintiff's objection, that, in heating the skates referred to in his former testimony, the operator held in his hand the bottom portion thereof, intended to lie against the sole of the wearer's shoe; that during the heating operation the portion so held did not become too hot to be held without burning; and that the skates were white nickel plated before welding, whereby the welding operation was materially facilitated.

The defendant then offered in evidence three United States patents to L. S. Lachman, Nos. 896,218, 904,881, and 904,882, for the purpose of establishing the entry of other processes into the field prior to Harmatta's amendment of his application on March 31, 1910. These were excluded, the Court of Appeals opinion not being understood as permitting their introduction at that stage of the proceeding.

Nothing further was offered by either party.

The Court of Appeals opinion is understood to have settled the following matters for the purposes of the further proceedings therein ordered:

(1) The process and product described in the patent in suit involve patentable invention.

(2) They were not anticipated by anything in the prior art disclosed by the evidence.

(3) Nor is the patent invalid by reason of any changes made before its issue in the original application for it.

(4) Upon the evidence in the record, there has been at least some infringement by the defendant of the claims in suit. If, in the view of the appellate court, the briefs had failed to show any infringement, its opinion could not have declared, as it does, that the bill "must, of course, be sustained." Whether infringement had been proved or not, supposing the patent valid, was a question fully argued on the appeal upon such evidence as both parties had seen fit to introduce, as the record and briefs show; and, as to a principal part of the alleged infringing manufacture, the opinion of this court that it had not infringed the patent, even if valid, had been stated.

Dismissal of the bill on the ground, now asserted by the defend-

ant, that no infringement has been proved, would therefore be a proceeding inconsistent with the Court of Appeals opinion, under which the further inquiry directed by this court is to determine two questions only: (1) Whether or not the decree should be limited so as to exclude from the profits recoverable under it profits "for anything done prior to the amendment" of the patentee's application in 1910; (2) whether from the injunction it is to contain there should be any exemption with respect to "machines constructed before the amendment was made," and what, if any.

The patent in suit was issued December 3, 1912. This bill was filed March 13, 1913. The patent is not for a machine, but for the described process of spot welding, and for the product thereby obtained.

Between the two above dates the defendant made articles like loom parts, marked Exhibits 8 and 9, and the skates, marked Exhibits 27, 28, and 32. In making such articles it used a machine which it had installed in May, 1911, and used ever since. This machine it bought of the Toledo Electric Welder Company, which, though not a nominal party, is defending this suit. All these facts seem to me established by the answers to the plaintiff's interrogatories in connection with the evidence in the record. There was no dispute as to any of them at the trial. The Court of Appeals opinion is not understood as deciding anything to the contrary.

No injunction is sought against the manufacture and sale of any machine, nor against the use of any, except to the extent that it may be used in following the patented process or in producing articles spot welded according to that process. The infringement alleged in the bill is "using a method of electric welding and making and selling metal work, plates and articles embodying the invention claimed in said letters patent." Against such infringement only is any injunction sought; in other words, against using the patented method or making the patented product, whether with the above or with any other machine.

The validity of the patent being now established, I am unable to doubt that loom parts like Exhibits 8 and 9 infringe the product claims in suit, or that in making them the defendant infringed the process claims in suit. Except as below stated, the defendant is not understood to deny that said claims have been infringed by the manufacture of said loom parts.

As to the skates, Exhibits 27, 28, and 32, the defendant contends that in making them there was no infringement either of the process or of the product claims, because the spot welds uniting their parts are not surrounded by unwelded areas, but are, on the contrary, continuous and overlapping so as to form practically continuous lines; and because they were made by the operator one after the other, each before its predecessor had time to cool, so as to form what is in effect a "line" as distinguished from a "spot" weld.

While the above may apply to a considerable proportion of the spot welds in these skates, it is not true of all; there are enough isolated spot welds to prevent the conclusion that the skates do not infringe, even if the above contention could otherwise prevail. And, taking the facts as to the making of those spot welds in the skates which are not

so isolated from each other to be as the defendant claims, some at least of the claims in suit, such as claims 3, 8, 9, 11, and 12, seem to me incapable of a construction according to which spot welding so performed would not infringe them, consistently with the Court of Appeals opinion. I am obliged to agree with the plaintiff that the "line welding," referred to in that opinion, all claims for which are therein said to have been stricken out of Harmatta's application in 1910, is line welding of the kind effected by the beveled roller electrodes described in Harmatta's original application, and is not that effected by making a line of overlapping, single spot welds.

The terms of the plaintiff's proposed decree, in connection with the pleadings, sufficiently show that no recovery of profits arising from any use of the patented process before the patent issued on December 3, 1912, nor from any articles produced before that date by said process is to be had. That no such recovery is sought has been expressly stated on the plaintiff's behalf. A recovery of profits "for anything done prior to the amendment" of 1910, as suggested by the Court of Appeals in its question 1 above, is thus not to be apprehended from the entry of said decree.

As to the other question which the opinion directs to be considered, "whether or not an injunction can go against machines constructed before the amendment was made," the defendant has contended that the result of such consideration must be to prevent any injunction against its use of the Toledo machine above mentioned, or of any similar machine constructed before said amendment; and this has been urged by it as requiring dismissal of the bill. With this contention, as has been stated, I am unable to agree.

There being no alleged infringing machines, strictly speaking, in the case, the Court of Appeals must be understood to mean, by its use of those words, machines like the defendant's, capable of infringing use in performing the patented process. The inquiry directed is therefore understood to be whether there is evidence requiring the specific exemption from the terms of any injunction against the defendant of the use of any particular machine or machines. The only machine with whose use the proposed injunction will interfere, so far as now shown, is the defendant's machine installed, as stated, in May, 1911, and I do not find evidence in the record sufficient to prove that this machine was constructed before March 31, 1910, the date of the amendment referred to. I do not understand the opinion as suggesting that the defendant may be left free to produce the patented product by the patented process upon other machines, in fact built before that date, if it can find them.

The draft decree submitted by the plaintiff is approved and may be entered upon motion to that effect.